UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAHRED L. SANBORN,

        Petitioner,

                                   CASE NO. 2:06-CV-10157
v.                             JUDGE ARTHUR J. TARNOW
                                   MAGISTRATE JUDGE PAUL J. KOMIVES

KENNETH ROMANOWSKI,[1]

        Respondent.
_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     E.   *Validity of Petitioner's Plea (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
              a. Deviation from Sentencing Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
              b. Misinformation Regarding Sentencing Range . . . . . . . . . . . . . . . . . . . . . . . 14
     F.   *Ineffective Assistance of Counsel (Claims II-IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     G.   *Vindictive Prosecution (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     H.   *Failure of Trial Court to Control Proceedings (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     I.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

---

[1]By Order entered this date, Kenneth Romanowski has been substituted for Hugh Wolfenbarger as the proper respondent in this action.

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner Jahred L. Sanborn is a state prisoner, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan.

2.     Petitioner was charged in a three-count indictment with first degree home invasion, MICH. COMP. LAWS § 750.110a(2); assault with intent to commit sexual penetration, MICH. COMP. LAWS § 750.520g(1); and attempted criminal sexual conduct committed during the course of a felony, MICH. COMP. LAWS § 750.92. On August 30, 2001, in the Isabella County Circuit Court, petitioner entered a plea of *nolo contendere* to Counts I and III, with Count II being dismissed pursuant to the plea bargain agreement.

3.     On September 21, 2001, prior to sentencing, petitioner attempted to withdraw his plea of *nolo contendere*, arguing that the plea was involuntary because he was misinformed by his trial counsel as to the minimum range sentencing guidelines. The trial judge, after denying petitioner's motion to withdraw his plea, sentenced him to a term of 8-20 years' imprisonment on Count I and to a concurrent term of 23 months' to five years' imprisonment on Count III.

4.     On or about May 21, 2002, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

I.     DEFENDANT'S PLEA OF *NOLO CONTENDERE* TO ATTEMPTED CRIMINAL SEXUAL CONDUCT FIRST DEGREE (DURING FELONY) MUST BE VACATED WHERE THERE WAS NO EVIDENCE OF AN ATTEMPT TO COMMIT SEXUAL PENETRATION.

II.    THE TRIAL COURT ERRED IN SENTENCING DEFENDANT IN

EXCESS OF THE SENTENCING GUIDELINES BY STATING FACTORS WHICH ARE ALREADY CONSIDERED IN THE GUIDELINES AS DEPARTURE REASONS, AND BY IMPOSING A DISPROPORTIONATE SENTENCE.

III.    DEFENDANT WAS DENIED DUE PROCESS OF LAW WHERE HE WAS SENTENCED ON THE BASIS OF INACCURATE INFORMATION.

IV.    THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WHERE HE WAS MISINFORMED AS TO THE MINIMUM RANGE OF THE SENTENCING GUIDELINES, AND THERE WAS NO DETRIMENTAL RELIANCE ON THE PART OF THE PROSECUTOR.

The court of appeals denied petitioner's application for leave to appeal. *See People v. Sanborn*, No. 241417 (Mich. Ct. App. June 18, 2002) (per curiam).

5.    Petitioner, proceeding *pro se*, sought leave to appeal these same issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Sanborn*, 469 Mich. 940, 670 N.W.2d 668 (2003).

6.    On or about January 8, 2004, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.    DEFENDANT/APPELLANT'S COURT APPOINTED DEFENSE COUNSEL WAS INEFFECTIVE WITHIN THE MEANING OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND CONST 1963, ART 1, SECTION 20, BASED ON CUMULATIVE ERRORS REPORTED WITHIN THIS ISSUE.

II.    DEFENDANT/APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE WITHIN THE MEANING OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND CONST 1963, ART 1, SECTION 20, BASED ON CUMULATIVE ERRORS REPORTED WITHIN THIS ISSUE.

III.    DEFENDANT/APPELLANT'S COURT APPOINTED APPELLATE COUNSEL WAS INEFFECTIVE WITHIN THE MEANING OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND CONST 1963, ART 1, SECTION 20, BASED ON CUMULATIVE

ERRORS REPORTED WITHIN THIS ISSUE.

IV.     DEFENDANT/APPELLANT WAS DENIED HIS FUNDAMENTAL DUE PROCESS AND EQUAL PROTECTION RIGHTS AS GUARANTEED UNDER BOTH THE MICHIGAN AND UNITED STATES CONSTITUTIONS, WHEN THE PROSECUTOR ENGAGED IN VINDICTIVE PROSECUTION AND FRAUD UPON THE TRIAL COURT DURING PETITIONER'S PENDING CRIMINAL ACTION.

V.      DEFENDANT/APPELLANT WAS DENIED HIS FUNDAMENTAL DUE PROCESS AND EQUAL PROTECTION RIGHTS AS GUARANTEED UNDER BOTH THE MICHIGAN AND UNITED STATES CONSTITUTIONS, WHEN THE TRIAL JUDGE FAILED TO CONTROL THE PROCEEDINGS AT ALL TIMES DURING PETITIONER'S PENDING CRIMINAL ACTION.

On April 7, 2004, the trial court denied petitioner's motion for relief from judgment. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sanborn*, 472 Mich. 917, 697 N.W.2d 153 (2005); *People v. Sanborn*, No. 255777 (Mich. Ct. App. Oct 8, 2004).

7.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 20, 2005. As grounds for the writ of habeas corpus, he raises the five claims that he raised in his motion for relief from judgment in the state courts as well as an additional claim:

PETITIONER'S CONVICTION WAS OBTAINED BY A PLEA OF *NOLO CONTENDERE* WHICH WAS INVOLUNTARY DUE TO HIS IGNORANCE OF THE FULL CONSEQUENCES OF HIS PLEA.

8.      Respondent filed his answer on November 13, 2006. He contends that petitioner's claims are without merit or procedurally defaulted.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner was originally charged with three felony counts stemming from an incident which

occurred on the night of January 4, 2001: (I) first-degree home invasion; (II) criminal sexual conduct/assault with intent to commit criminal sexual penetration; and (III) attempted criminal sexual conduct first-degree (during the course of a felony). On August 30, 2001, prior to trial, petitioner pleaded *nolo contendere* to counts one and three in exchange for a dismissal of count two. *See* Plea Tr., at 3-4. Prior to the entering of the plea, the prosecution set forth the terms of the plea agreement and petitioner indicated that he understood those terms to be the complete plea agreement. *See id.*, at 4-5. Petitioner's trial counsel indicated that the bases for petitioner's no contest plea was "extreme intoxication" and both the defense and prosecution agreed that there was no sentence agreement or cap regarding this no contest plea. *See id.*, at 5. The trial court elicited a factual basis for petitioner's plea based upon petitioner's assertion of extreme intoxication and the preliminary examination testimony of the victim. *See id.* at 5.

The judge then discussed the sentencing ramifications with petitioner. With respect to the first-degree home invasion and attempted criminal sexual conduct in the first-degree charges the judge asked: "All right, Mr. Sanborn, do you understand that the maximum penalty that you could get for the home invasion first degree is twenty years, up to twenty years in prison and or a $5,000.00 fine. And for the attempted criminal sexual conduct first degree, during a felony, the maximum penalty you could get is up to five years in prison?" *Id.* at 5. Petitioner responded affirmatively. *See id.* Petitioner stated that he had discussed the matter with his attorney and that he was satisfied with his representation. *See id.*, at 6, 11. The judge then elicited from petitioner his understanding of the rights he was giving up by pleading no contest. *See id.*, at 6-7. Petitioner was then asked if there had been any promises outside of those contained in the plea agreement made to obtain his no contest plea. *See id.*, at 8. Petitioner responded that there had not been. *See id.*

Petitioner also stated that he had not been threatened or coerced into pleading no contest to these charges and that it was his choice to do so. *See id.* The judge asked petitioner to affirm that he was unable to give an accurate description of what happened on the night of the offense due to his extreme intoxication, and petitioner indicated that he did not recall a lot of things that happened that night. *See id.*, at 9. Petitioner then indicated that he understood that a no contest plea would be treated as a plea of guilty for the purposes of sentencing and that as a result of this plea he would have two felony convictions on his record. *See id.* Upon being asked, petitioner indicated that he could read and write in English and that he was not currently under the influence of ay drugs or alcohol. *See id.*, at 11. Petitioner was again asked if he understood that he was pleading no contest to the offense of home invasion, first degree and attempted criminal sexual conduct, first degree during a felony and he responded affirmatively. *See id.* The court then stated that it was, "going to find that the plea of no contest to the two charges that Mr. Sanborn has just entered was made, voluntarily, knowingly and that it's accurate. The court is going to accept the pleas of no contest offered by defendant, and I'll order the pleas no contest to be placed on the record." *Id.*, at 11-12.

C.    *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either

direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Even were the Court to conclude that petitioner's claims are procedurally default, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Validity of Petitioner's Plea (Claim I)*

Petitioner contends that his *nolo contendere* plea was not knowing and voluntary, and hence was invalid, because although he thought his minimum sentence would be between 30-to-50 months, the trial court imposed a minimum sentence of 96 months. Petitioner claims that, in advance of his plea, both the prosecutor and defense counsel calculated that the Michigan sentencing guidelines would establish a minimum range of 30-to-50 months. At the time of sentencing, however, the minimum range was calculated to be 51-to-85 months. This increase was the result of a prior juvenile record which both attorneys were unaware of when they initially scored petitioner's minimum range during plea negotiations. *See* Sentencing Tr., at 4. The sentencing court exceeded the guidelines and sentenced petitioner to a minimum of 96 months (8 years), reasoning the sentencing variables only covered what happened and not what petitioner intended to do. *See id.*, 33. The sentencing judge explained the deviation from the sentencing guidelines on record as follows:

> "Now Mr. Burdick [prosecutor] has asked this Court to deviate from the guidelines, and basically what Mr. Burdick has said is that had it not been for the brave actions of Ms. Kingsley [victim] that a rape probably would have occurred. And there is no question in this court's mind that it probably would have too, based on the circumstances ... when you look at the sentencing variables and there isn't a variable to cover what you were intending to do, it only covers what you did do ... I find that the guidelines do not take that into consideration and that's a valid reason for the court to deviate from the guidelines."

*See* Sentencing Tr., at 32-33. Petitioner claims that his plea was involuntary because, had he known that the court would exceed the minimum range of 30-to-50 months, he would not have entered his plea.

1.      *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances[2]. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton,* 17 f.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all the direct consequences of his plea. *See Brandy,* 397 U.S. at 755; *King,* 17 F.3d at 153. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson,* 467 U.S. 504, 511 (1984). Thus,

> [it] is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence–because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted). It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Id.* The "agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Brady,* 397 U.S. at 749. In other words, "a guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Chizen v. Hunter,* 809 F2d 50, 561 (9th Cir., 1986)(citing *Machibroda v. United States,* 368 U.S. 487, 493 (1962)).

In general, being fully aware of the consequences of a plea  means that the defendant  must be aware of the maximum sentence that may be imposed. *See King,* 17 F.3d at 154. A solemn

---

[2] "Because a plea of *nolo contendere* is treated as an admission of guilt, the law applicable to guilty pleas is also applicable to a plea of *nolo contendere*." *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990)(citations omitted).

declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Henderson v. Morgan,* 426 U.S. 637, 648 (1976). In cases where a habeas petitioner challenges the voluntariness of his plea, the State can meet their burden of showing that the plea was voluntary by producing a written transcript of the State court proceeding. *See Garcia v. Johnson,* 991 F2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the State court findings of fact and to the judgment itself. *See id.* at 326-327. The Sixth Circuit has stated that, "where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *Warner v. United States,* 975 F2d 1207, 1212 (6th Cir. 1992) (citing *Moore v. Estelle,* 526 F2d 690, 696-697 (5th Cir., 1976). The Court in *Warner* went on to say that, "absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court..." *Id.,* at 1213. One of the main purposes of a proper plea colloquy is too cure any misunderstandings that a petitioner may have had about the consequences of the plea prior to it's being accepted by the court. *See Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999). Therefore, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge,* 431 U.S. at 74. The United States Supreme Court has warned that, "[w]aiving trials entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *McMann v. Richardson,* 397 U.S. 759, 770 (1970).

The Sixth Circuit is generally cautious of petitioners who claim that they subjectively

believed their sentence would be lighter than that which actually resulted.  *See Baker v. United States,* 781 F.2d 85, 92 (6th Cir., 1986)*; United States v. Crusco,* 536 F.2d 21, 24 (3rd Cir. 1976).  In similar cases it has stated:

> "If we were to rely on [the defendant]'s alleged subjective impressions rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statement during the plea colloquy ... indicating the opposite."

*Ramos,* 170 F.3d at 566.  That being said, it is clear that the general rule regarding assertions of involuntariness based on a petitioner's misunderstanding of his plea bargain in spite of a properly conducted plea colloquy is that,  "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended ... the likely penalties attached to alternative courses of action." *Brady,* 397 U.S. at 748.

    2.    *Analysis*

Petitioner contends that his *nolo contendere* plea was involuntary because he was under the impression that his sentence would be between 30-to-50 months, rather than the 96 months imposed by the court, and that had he known he would be subjected to a larger sentence he would have opted to go to trial. Specifically, petitioner contends that the information he received from his attorney regarding the his potential sentencing range was inaccurate and that, aside from that misinformation, the judge erroneously exceeded the correct sentencing guidelines when he handed down petitioner's sentence. The Court should conclude that the petitioner is not entitled to habeas relief on this claim.

*a. Deviation from Sentencing Guidelines*

The portion of petitioner's claim that attacks the trial court's departure from the minimum sentencing guidelines is based on a purported violation of state law and therefor is not cognizable

on federal habeas review. Numerous cases from the United States Supreme Court and the Sixth Circuit Court of Appeals have emphasized that errors in the application of state law are not to be questioned on habeas review, as it is beyond the jurisdictional bounds of the federal courts to second guess a state court's handling of such matters. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (federal habeas corpus relief does not lie for errors of state law); *Waters v. Kassulke,* 916 F2d 329, 335 (6th Cir., 1990) (errors in application of state law are not to be questioned in habeas courts). More specifically, other circuits have repeatedly held that an error in sentencing does not create the type of issue appropriate for federal habeas review. *See Johnson v. Arizona,* 462 F2d 1352, 1353 (9th Cir., 1972); *Haynes v. Butler,* 825 F2d 921, 924 (5th Cir., 1987), *cert den* 484 U.S. 1014 (1988). Michigan's sentencing guidelines are simply a tool utilized by state court sentencing judges to assist them in the exercise of their discretion; they do not create substantive rights. Furthermore, the Michigan Supreme Court has held that Michigan sentencing guidelines are not mandatory; sentencing judges are required to consult the guidelines but are not required to adhere to them. *See People v. Potts,* 436 Mich. 295, 302, 461 N.W.2d 647, 650 (1990). Thus, a trial court's departure from or misapplication of the Michigan sentence guidelines does not present a constitutional claim cognizable on habeas review. *See Cook v. Stegall,* 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.). That being the case, it is clear that petitioner's claim that his plea was involuntary due to the state court judge's failure to adhere to the Michigan sentencing guidelines is not cognizable upon habeas review and therefor does not warrant habeas relief.

*b. Misinformation Regarding Sentencing Range*

Second, petitioner challenges the voluntariness of his plea by arguing that he was promised a lesser sentence based upon inaccurate advice given by his attorney. Even a cursory review of the relevant case law, *supra,* shows that petitioner's claim is meritless in this regard. The trial court in petitioner's plea proceedings conducted the plea colloquy properly and made certain that petitioner was aware of the direct consequences of his plea. When a trial court scrupulously follows the procedure for taking petitioner's plea, and there is no extraordinary circumstance or other reasonable explanation as to why petitioner did not disclose his misinformed assumption regarding his sentencing when specifically asked to do so by the court, he must be held to the terms which were placed on the record during his plea hearing. *See Baker,* 781 F.2d at 90. Because the main purpose of a plea colloquy is to ensure the terms of the plea have been clearly outlined and explained to a criminal defendant, a claim predicated on misleading information given by counsel prior to the plea hearing can never constitute an "extraordinary circumstance." *See Ramos,* 170 F.3d at 565.

In petitioner's case, the entire terms of the plea were placed on the record and petitioner was asked to answer specific questions regarding those terms. The purpose of these questions was to guarantee that he understood those terms and was of sound mind and body to voluntarily agree to them . The United States Supreme Court in *Mitchell v. United States* emphasized that, " [t]he purpose of a plea colloquy is to protect the defendant from an un unintelligent or involuntary plea." 526 U.S. 314, 322 (1999). The transcript of the plea proceeding, summarized in the *Factual Background* section, *supra,* shows that the plea colloquy was properly conducted and that petitioner was informed of the direct consequences of entering a plea of *nolo contendere*. Petitioner was asked whether or not he was happy with his attorney's representation, whether he had been given the

opportunity to discuss the matter with his attorney and whether or not he understood the rights he would be giving up by entering a plea. In response to all these questions, petitioner answered affirmatively. *See* Plea Tr., at 6-7, 11. When asked if he had been threatened into entering a plea he said he had not. *See id.,* at 8. When asked if he was under the influence of any mind altering substances he answered that he was not. *See id.,* at 11. Petitioner was also made aware of the maximum sentence that could be imposed, when the trial judge informed him that he could receive up to twenty years imprisonment for the home invasion charge and up to five years in prison for the attempted criminal sexual conduct charge. *See id.,* at 5. Even assuming that petitioner's counsel did give him inaccurate information prior to this plea proceeding, the trial court remedied any misconception by informing him of the maximum sentence he could be subjected to. *See Boyd v. Yukins,* 99 Fed.Appx. 699, 703 (6th Cir., 2004).

In posing a question that cuts to the heart of petitioner's claim, the judge asked if any promises had been made outside of those contained in the plea agreement which induced petitioner into entering his plea. *See* Plea Tr., at 8. Petitioner answered "No", and thereby squandered his final opportunity to address the false conceptions he was under based upon information given by his attorney. *See id.* Even if, in spite of these procedural safeguards, petitioner misunderstood the sentence that would likely be imposed upon him, his subjective and unverifiable impressions concerning his likely prison term cannot overcome his statements made on the record to the trial court during his plea colloquy. *See Ramos,* 170 F.3d at 566. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief with respect to counsel's representations regarding sentencing.

F.      *Ineffective Assistance of Counsel (Claims II-IV)*

Petitioner next claims that he was denied his right to the effective assistance of counsel in a number of respects. Specifically, petitioner contends that his trial counsel was ineffective for failing to challenge the illegality of his arrest (Claim II), and for failing to conduct any investigation and abandoning petitioner's defense (Claim III). Petitioner also contends that his appellate counsel was ineffective for failing to consult with him and for failing to move for an evidentiary hearing to develop a record for his ineffective assistance of trial counsel claims (Claim IV). The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1. *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*,

18

174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

    2.    *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to challenge his arrest on assault with intent to commit sexual penetration, the count which was ultimately dismissed. Petitioner contends that this charge was not supported by probable cause because the victim stated that she was not sexually assaulted. This claim is without merit. At the preliminary examination, the victim testified that she awoke in her third-floor apartment to find a man on top of her, straddling her. She tried to scream, but the man told her to shut up or she would die. He attempted to put a stocking over her head, but she was able to throw him off of her and onto the floor. She picked up a lamp and started hitting him with it. She chased him out of her apartment. *See* Prelim. Exam. Tr., at 8-14. The victim testified on cross-examination that petitioner did not touch her in a sexual manner, nor did he make any comments regarding sex. *See id*. at 25.

To the extent that petitioner challenges the probable cause supporting his arrest, the claim is without merit. As noted by the trial court in rejecting petitioner's motion for relief from judgment, even if there was not probable cause to arrest petitioner on the assault with intent to commit sexual penetration charge, there was sufficient evidence to arrest petitioner on the home invasion charge. *See People v. Sanborn*, No. 01-9798-FH, at 7-8 (Isabella County, Mich., Cir. Ct. Apr. 7, 2004) [hereinafter "Trial Ct. op."].[3] Thus, the arrest of petitioner was supported by probable cause on some charge, and was not illegal, and any challenge to the arrest itself would have been without

---

[3]This opinion is attached as Exhibit D to petitioner's habeas application.

merit.

To the extent petitioner challenges the existence of probable cause supporting the bind-over on the charge to the circuit court, the claim is likewise without merit. Notwithstanding the victim's testimony that petitioner did not touch her in a sexual manner, the victim's preliminary examination testimony provided probable cause to support a charge of assault with intent to commit sexual penetration. The elements of this offense are simply an assault involving force or coercion, done with the purpose of committing a sexual penetration. *See People v. Nickens*, 470 Mich. 622, 627, 685 N.W.2d 657, 661 (2004). However, "an actual touching need not occur and '[w]hen the act involves penetration, it is not necessary to show that the sexual act was started or completed." *People v. Williams*, No. 205978, 2000 WL 33395316, at *12 (Mich. Ct. App. Dec. 8, 2000) (quoting *People v. Snell*, 118 Mich. App 750, 755, 325 NW2d 563, 566 (1982)). Here, petitioner's intent could be inferred from the fact that he assaulted the victim while she was sleeping, got on top of her on her bed, attempted to control her arms, and threatened to kill her if she was not quiet. These facts were sufficient to infer that petitioner had a sexual intent when he assaulted the victim. *See id.* at *13. Even if the inference would not have been strong enough, by itself, to convict petitioner beyond a reasonable doubt, the inference was sufficient to provide probable cause to support the charge. *See* Trial Ct. op., at 8-10. Thus, any motion to quash the bind-over would have been futile, and counsel was thus not ineffective.

Petitioner also contends that counsel was ineffective for failing to prepare and investigate, and for abandoning his defense. This claim is without merit. A review of the record shows that counsel was prepared and conducted a vigorous defense of petitioner up to the time of the plea. At the preliminary examination counsel cross-examined the victim, eliciting from her that she could

not identify petitioner and had picked someone else out of a photographic array, and that petitioner did not commit any sexual acts or make any sexually suggestive comments. *See* Prelim. Exam. Tr., at 15-16, 19-20, 25-26. Counsel also cross-examined the evidence technician, eliciting from him that no fingerprints were found on the doorknob which petitioner used to flee the victim's room *See id*. at 44 Counsel argued at the conclusion of the preliminary examination that the victim's testimony did not support a bind-over on the assault charge. *See id*. at 68-69. After the court concluded that there was sufficient evidence to bind-over petitioner, counsel moved for a reduction in bond, making an extensive argument in support of the motion. *See id*. at 71-74. Prior to trial, counsel moved successfully to exclude evidence of a prior sexual assault by petitioner. *See* Hr'g Tr., Motion to Disallow Testimony, dated 8/24/01, at 1-18. Counsel also filed a notice of intoxication defense. Finally, prior to sentencing, when it was apparent that counsel and the prosecutor had failed to correctly calculate petitioner's criminal history score for purposes of sentencing, counsel moved to withdraw the plea, and argued extensively concerning the proper scoring of the guidelines and the proper sentence the court should impose. *See* Sentence Tr., *in passim*. Thus, the record belies petitioner's claim that counsel abandoned him or failed to prepare the case. Further, petitioner does not suggest any additional exculpatory evidence or theories would have been uncovered by further investigation or preparation. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it could have affected the outcome of the trial.").

In short, nothing supports petitioner's claim that counsel was unprepared to defend him, and petitioner has suggested no additional evidence counsel should have uncovered or additional defense

theories counsel should have pursued.  In these circumstances, petitioner cannot show that his trial counsel was ineffective.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

> 3.      *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise on direct appeal the issues raised in his motion for relief from judgment (and in this habeas proceeding).  To show prejudice in the context of an appellate counsel claim, petitioner must show that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  As explained in this Report, petitioner's claims are without merit.  Thus, he cannot show that he was prejudiced by counsel's failure to raise these claims on direct appeal.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Vindictive Prosecution (Claim V)*

Petitioner also contends that his conviction is invalid because it was the result of a vindictive prosecution.  Specifically, he contends that the present case was brought by the prosecutor because he had been acquitted in a prior sexual assault case brought by the same prosecutor.  The Court should conclude that this claim is without merit.

> 1.      *Clearly Established Law*

Generally, a prosecutor has broad discretion in deciding when and what to prosecute.  As the Supreme Court has explained, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion."  *Bordenkircher v. Hayes*,

434 U.S. 357, 364 (1978). Nevertheless, the Due Process Clause of the Constitution prohibits the government from undertaking a prosecution based solely on a vindictive motive. *See id.* at 363. "Because a claim of vindictive prosecution 'asks a court to exercise juridical power over a "special province" of the Executive,' courts must begin from a presumption that the government has properly exercised its constitutional responsibilities[.]" *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985))). "This 'presumption or regularity' in prosecutorial decision making can only be overcome by 'clear evidence to the contrary,' The standard of proof 'is a demanding one.'" *Id.* (quoting *Armstrong*, 517 U.S. at 463-64). In certain cases, a presumption of vindictiveness "may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct." *United States v. Goodwin*, 457 U.S. 368, 373 (1982). A presumption of vindictiveness arises in circumstances in which a reasonable likelihood of vindictiveness exists. *See Blackledge v. Perry*, 417 U.S. 21, 27 (1974). Where the presumption of vindictiveness does not arise, the defendant bears the burden of proving actual vindictiveness. *See Wasman v. United States*, 468 U.S. 559, 569 (1984).

      2.    *Analysis*

      Here, petitioner claims that the charges filed against him and to which he pleaded guilty were motivated by the prosecutor's desire to retaliate against him for his acquittal in a prior sexual assault case. This allegation does not raise a presumption of vindictiveness. As the Seventh Circuit has noted, the Supreme Court has never directly addressed whether a presumption of vindictiveness applies "to situations where the defendant is charged, post-appeal, on the basis of *different* criminal conduct, as opposed to a heightened charge on the basis of the same underlying conduct." *Williams*

*v. Bartow*, 481 F.3d 492, 502 (7th Cir. 2007). Nevertheless, every court of appeals to have considered the question has concluded that no presumption of vindictiveness can arise in such circumstances. As the Ninth Circuit explained, "Nothing in *Blackledge* presumed to give the defendant a free ride for separate crimes he may have committed, or to prevent a prosecutor from brining new charges as a result of changed or altered circumstances which properly bear on prosecutorial discretion." *United States v. Martinez*, 785 F.2d 663, 669 (9th Cir. 1986) (citations omitted). Thus, "when the prosecutorial conduct involves *other* criminal conduct, the defendant must demonstrate actual vindictiveness rather than relying on the presumption recognized in *Blackledge*[.]" *Williams*, 481 F.3d at 502; *accord Maddox v. Elzie*, 238 F.3d 437, 448 (D.C. Cir. 2001); *United States v. Johnson*, 171 F.3d 139, 141 (2d Cir. 1999) (citing cases from Third, Eighth, and Tenth Circuits); *United States v. Esposito*, 968 F.2d 300, 304-05 (3d Cir. 1992); *United States v. Spence*, 719 F.2d 358, 363 (11th Cir. 1983).

Because the prosecutor's decision to charge petitioner with a wholly separate crime following his acquittal does not give rise to a presumption of vindictiveness, petitioner must demonstrate actual vindictiveness on the part of the prosecutor. Petitioner is unable to do so. As noted above, there was no dispute that petitioner was in the victim's home, and there was probable cause to support both the home invasion and assault charges. As noted above, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Petitioner has presented nothing to show that the prosecutor was motived by an animus other than this assertion that the charges were not supported by probable cause and thus animus is the only logical

explanation. However, as just indicated the charges were supported by probable cause, and "[a] mere allegation the government was prosecuting defendant because it was upset over losing a trial is not enough to establish vindictiveness." *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004). In short, petitioner has offered nothing to show that the prosecutor's decision to prosecute him "was not based on the usual determinative factors a responsible prosecutor would consider before bringing charges." *Jarrett*, 447 F.3d at 525 (internal quotation omitted). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Failure of Trial Court to Control Proceedings (Claim VI)*

Finally, petitioner contends that his conviction is invalid because the trial court failed to control the proceedings. This claim, however, is merely a rehash of petitioner's previous claims. Specifically, petitioner contends that the trial court failed to control the proceedings by binding him over on the assault charge and not remedying the prosecutor's vindictive charging, denying his request to withdraw his plea, and imposing a sentence on petitioner above the guidelines range. As explained above, each of these claims is without merit, and it therefore follows that petitioner's claim that the trial court failed to control the proceedings is likewise without merit.

I.     *Conclusion*

In view of the foregoing, the Court should conclude that each of petitioner's claims is without merit. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 7/26/07


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 26, 2007.
>
>                         s/Eddrey Butts
>                         Case Manager